IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK MOFFETT,

    Plaintiff,

v().                                                                No. 12-1443-SAC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court reviews the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether

substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, it will not mechanically accept the findings of the Commissioner. The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn,* 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant establishes that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show

that he is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If not, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his previous work; unless the claimant shows that he cannot perform his previous work, he is determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas,* 540 U.S. 20, 24-25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Nielson,* 992 F.2d at 1120; *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson,* 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e, f, g); 416. 920(a)(4), 416. 920 (e, f, g).

## II. History of case

Plaintiff is insured for disability insurance benefits from May 25, 2000 through December 31, 2002.[1] He alleges disability based on ankle pain and mental impairments during that time. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since plaintiff's alleged onset date of disability. At step two, the ALJ found that plaintiff had the following severe impairments: status post left ankle fracture with open reduction and internal fixation, and degenerative arthritis of the left ankle secondary to that fracture. The ALJ added that plaintiff had been diagnosed with affective disorder of major depression and alcohol abuse disorder. At step three, the ALJ determined that plaintiff's impairments did not meet or equal a listed impairment.

The ALJ found that plaintiff had the RFC to perform sedentary work, with the following exceptions:

> [Plaintiff] is limited to no more than occasional postural maneuvers such as balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. He must avoid climbing ladders, ropes and scaffolds. He is limited to occupations that do not require exposure to dangerous

---

[1] This period commended the day after Plaintiff received a final ALJ decision denying his previous application for disability benefits. Plaintiff was found disabled as of November 23, 2009 on his Supplemental Security Income application.

4

machinery or unprotected heights. He is limited to the performance of simple, routine, repetitive tasks. In addition, he is limited to not more than occasional interaction with co-workers and the general public. Finally, the occupation must allow him to elevate one leg to footstool height.

Dk. 10, Exh., 2, p. 18. After determining plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that plaintiff was not disabled. Plaintiff challenges the ALJ's RFC findings.

**III. Does substantial evidence support the ALJ's RFC findings?**

**Workers' compensation ratings**

In determining plaintiff's RFC, the ALJ relied in part on the opinions of doctors who rated plaintiff for purposes of workers compensation in 1997 and 1999. The ALJ found the ratings to be "rather insignificant limitations," rather than the type that would be expected to prevent all work activity in the future. And Dr. Olsen, D.O., believed plaintiff was a candidate for sedentary work at that time. (Tr. 465). Plaintiff's medical providers and his mental healthcare providers believed plaintiff would do well in vocational rehabilitation training, and did not impose significant restrictions. This shows their belief that plaintiff was capable of working at the relevant time.

Plaintiff contends these assessments are irrelevant and stale since they were superseded by Dr. Harbin's 2002 evaluation of plaintiff's progressive condition, and were done during a time when plaintiff was

undergoing surgery and attending vocational rehabilitation. The record reflects that the ALJ knew the dates of all of these opinions and that plaintiff had two surgeries and attended vocational rehabilitation during that time frame. For the ALJ to have considered the workers' compensation assessments to the extent they revealed plaintiff's progressive condition immediately before the insured period was proper.

**Consultants**

The ALJ also credited the opinions of medical consultant Dr. Warren, M.D. and psychological consultant Dr. Schulman, PhD. Dr. Warren found plaintiff's allegations to be "partly credible," agreeing that plaintiff had "impairment that limits functional capacity," but concluding that there was "insufficient evidence to establish impairment" during the relevant period. (Tr. 344-50). Dr. Schulman found that plaintiff had the psychological ability to function in the workplace and to meet work standards, with certain limitations (Tr. 357-60). Plaintiff does not challenge the ALJ's reliance on these opinions.

**Dr. Harbin's opinion**

Plaintiff contends that the ALJ erred by ignoring a medical source statement of treating physician Hardin rather than giving it controlling weight. Where an opinion of a treating physician is "well supported by clinical and laboratory diagnostic techniques and… not inconsistent with other substantial evidence in the record," it merits controlling weight.

6

*Castellano v. Secretary Of Health And Human Services*, 26 F.3d 1027, 1029, (10th Cir. 1994); 404.1527(a)(2), 416.927(a)(2).

In February of 2011, Dr. Harbin completed a medical source statement questionnaire stating that Plaintiff had advanced traumatic arthritis in his left ankle that severely restricted his ability to stand, lift, and carry. Dr. Harbin based his 2011 opinion on Plaintiff's left ankle advanced traumatic osteoarthritis, the x-ray findings, and the possibility that plaintiff may need additional surgery to remain ambulatory (Tr. 645). It was thus well supported by clinical and laboratory diagnostic techniques.

Dr. Harbin opined that Plaintiff could stand and/or walk for less than one hour per day, could sit continuously for less than fifteen minutes at a time, and needed to lie down occasionally during the day to relieve pain. When asked whether "these impairments" were present before 12/31/2002, Dr. Harbin answered "yes." (Tr. 645). Petitioner contends that "these impairments" are the limitations on sitting, standing, walking, and lying down, noted above. But that reading contradicts the plain language of the form, as it did not ask the doctor to identify plaintiff's impairments, but instead asked his opinion of what the patient could do "*despite* his impairments." (Tr. 644) (emphasis added). Given the plain language of the form, plaintiff's "impairment" was the advanced traumatic arthritis in his left ankle. Further, construing the language of the form in this way is consistent with the term "impairment" as used in the five-step sequential evaluation

process to determine disability. Dr. Harbin did not indicate that any of the limitations he imposed because of plaintiff's impairment were necessary in 2000-2002. Nor did he give an ultimate opinion on whether plaintiff had the physical ability to maintain gainful employment by sitting with his leg elevated or otherwise during the insured period. Dr. Harbin's opinion was thus only marginally material to the relevant time period, at best.

The ALJ's decision specifically references Dr. Harbin's treatment, although it does not specify the weight given to his opinion. The ALJ recognized that plaintiff's August of 2002 appointment with Dr. Harbin was the only medical treatment sought by plaintiff during the relevant period:

> There is no medical evidence of record during the portion of the period at issue from May 2000, when [plaintiff] did not return for mental health treatment in Denver, until August 19, 2002 when he saw Gary Harbin, M.D. complaining of ankle pain. ... Dr. Harbin prescribed an ankle and foot orthotic for the claimant to take pressure off the injured area of the ankle. He did not require further treatment from Dr. Harbin until September 2010.

Tr. 21.

The very next paragraph of the ALJ's decision makes clear that the ALJ tacitly rejected the limitations noted by Dr. Harbin, finding them contradicted by plaintiff's own testimony:

> Based on the claimant's testimony, it appears that he had been successfully attending and completing college classes a year by the time he got the above treatment. After this appointment, he continued to successfully attend and complete college courses despite any distraction. He was successful in his college classes after he returned to Kansas and stayed there as his counselor had recommended. If he could manage the complex subject matter of college courses, attend the classes and successfully complete the classes, even at somewhat

>less than a full load of classes, he could have performed simple routine and repetitive work.

Tr. 21. The ALJ thus rejected Dr. Harbin's opinion on the extent of plaintiff's limitations, finding it inconsistent with other substantial evidence in the record as to plaintiff's abilities during 2000-2002. See *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). Where the ALJ does not expressly state the weight given a treating physician's opinion, but "[the court] can tell from the decision that the ALJ declined to give controlling weight to [a treating physician's] opinion, [the court] will not reverse on this ground." *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

The ALJ properly dismissed Dr. Harbin's conclusions. In contradiction to Dr. Harbin's statement in 2011 that Plaintiff could sit only for fifteen minutes at a time, Plaintiff testified that prior to 2002, sitting did not bother him as much, and he could sit for one or two hours without changing positions (Tr. 46-47, 644). And plaintiff demonstrated his ability in 2001-02 to sit and to walk and to concentrate sufficiently to attend college classes and succeed in them. As noted above, Dr. Harbin's limitations stated in his 2011 opinion were not shown to be sufficiently related to the relevant period. But even if these limitations related to the relevant period, they were contradicted by other substantial evidence, *i.e.*, plaintiff's testimony and the other evidence noted by the ALJ.

Nor has plaintiff shown how the ALJ's RFC is inconsistent with Dr. Harbin's findings. Any error by an ALJ in failing to specify the weight

accorded to a mental-status form completed by a treated physician in denying claimant's applications for Social Security disability insurance benefits is harmless where the work-related limitations on the form are not inconsistent with the ALJ's RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012). Plaintiff contends that he could not do sedentary work while lying down or reclining per Dr. Harbin's limitations. But lying down during breaks or lunch periods during an eight hour day is consistent with the RFC, with Dr. Harbin's opinion that he lie down "occasionally," and with the vocational expert's finding that he could do sedentary work. And plaintiff's assertion that he needed to elevate his leg while seated to a height greater than would be permitted at sedentary work is not supported by the record.

The ALJ's decision notes the length of treatment, the lack of frequency of examination, and the nature and extent of the treatment relationship plaintiff had with Dr. Harbin. The court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear … the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

The ALJ properly considered the minimal medical treatment plaintiff received for his ankle during the relevant time. After his 1999 surgery and

related rehabilitation, plaintiff did not seek treatment for his ankle until he received an orthotic ankle brace from Dr. Harbin in August of 2002. Plaintiff saw Dr. Harbin only once during the relevant period, and none during the eight year period following it. The ALJ did not imply that Plaintiff's minimal treatment alone proved that he was not disabled; rather, the ALJ properly considered Plaintiff's treatment history as one factor in evaluating his credibility. *See* 20 C.F.R. § 404.1529(c)(3)(v).

**Pain analysis**

Plaintiff alleges that the ALJ's failure to consider Dr. Harbin's opinions, and the examination and x-rays that support them, also dooms the ALJ's pain analysis. But the ALJ did consider Dr. Harbin's opinion and Plaintiff does not point to evidence of record that would establish that he suffered disabling pain during the relevant period.

A disability claimant's complaints of disabling pain are evaluated using the three-step analysis set out in *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987).

> Under *Luna* an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling. *Id.* at 163–64.
>
> Evidence the ALJ should consider includes such items as "a claimant's persistent attempts to find relief for h[er] pain and h[er] willingness to try any treatment prescribed, regular use of

> crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems" and "the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Id.* at 165–66. But so long as the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility," he need not make a "formalistic factor-by-factor recitation of the evidence." *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000). Again, common sense, not technical perfection, is our guide.

*Keyes-Zachary*, 695 F.3d at 1167.

The ALJ complied with this law, addressing nearly all of the factors noted above. In assessing plaintiff's pain, the ALJ noted that plaintiff had not been prescribed strong pain medications during the relevant period, and that he took no prescription pain medications of any kind. Plaintiff contends that the ALJ erred in not considering his reason for not taking those medications - that plaintiff preferred to live with the pain rather than risk getting hooked on narcotic pain killers. But that reason, even if fully credited by the ALJ, would not have explained why claimant did not take non-narcotic prescription pain medication to alleviate his pain. *See Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013), citing *Wilson v. Astrue,* 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ's determination that claimant's "testimony of disabling pain was not credible" was supported by evidence that claimant "did not take prescription strength pain relief medication"); *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir. 1988) ("[I]n determining the credibility of pain testimony" ALJ may consider "the levels of medication and their effectiveness"). Any oversight was thus harmless error.

12

Plaintiff similarly contends that the ALJ erred by not considering plaintiff's reasons for his lack of medical treatment. Plaintiff contends that Dr. Harbin gave him the option in 2002 of using a brace or having ankle fusion, but he could not afford either so he did not return. But the cited evidence does not support that contention. It states that plaintiff could not afford the brace Dr. Harbin prescribed, but that plaintiff uses a brace. R. 159. The record additionally shows that: 1) plaintiff did not regularly use any assistive device before 2002; 2) plaintiff saw Dr. Harbin only once during the insured period; 3) plaintiff did not have any regular contact with any doctor during the insured period; 4) plaintiff did not return for additional treatment or complain about pain for over eight years after he saw Dr. Harbin in 2002. These are relevant considerations.

Plaintiff contends that the ALJ's pain analysis fails to consider his depression. Plaintiff points to a psychiatric evaluation in September of 1997 which found him to be depressed and overwhelmed by his injury, and a therapist's diagnosis of "pain disorder" in March of 1998. Dk. 14, p. 10. These complaints, however, related to plaintiff's ankle injury and predated his ankle surgery in 1999, which plaintiff admits improved his ankle and pain symptoms. The ALJ accurately summarized plaintiff's substance abuse issues, his depression, his psychiatric treatment, his alcohol treatment, and his psychologist's opinion as to plaintiff's abilities and limitations. (Tr. 16-

17). Plaintiff fails to show how any psychological impairment contributed to a functional limitation in 2000-2002 not considered by the ALJ.

Similarly, plaintiff contends that in assessing plaintiff's pain, the ALJ ignored the atrophy resulting from plaintiff's ankle injury, surgery, and recovery. But plaintiff fails to explain how his atrophy supports his claims of functional limitations. Plaintiff has not shown that his atrophy limited him in any way not considered by the ALJ in addressing plaintiff's ankle injury and its subsequent treatment. Nor has plaintiff shown that atrophy necessarily produces pain.

Plaintiff also alleges that the ALJ mischaracterized his daily activities, but the record supports the ALJ's finding that plaintiff engaged in regular household activities, assisted his mother, and cared for his own needs. In determining the credibility of pain testimony an ALJ may consider "the nature of [claimant's] daily activities." *Newbold v. Colvin*, 718 F.3d 1257 (10th Cir. 2013). Plaintiff admitted that he helped his mother by, among other things, doing her grocery shopping for her and taking out her trash, and that he did his own laundry and cooked simple meals. Plaintiff admitted that he would occasionally play pool and would shoot pool for two or three hours, sitting down only in between games. Plaintiff was admittedly able to travel between Kansas and Colorado, and to attend and succeed in college classes. These activities, all accomplished without the benefit of any prescription pain medication, are properly considered in evaluating a

claimant's complaints of pain. See *Gay v. Sullivan*, 986 F.2d 1336, 1339 (10th Cir. 1993) (citing *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979) (re: school attendance).

Contrary to plaintiff's assertions, the ALJ did not rely solely upon plaintiff's household activities or any single other factor in determining that plaintiff is able to engage in substantial gainful activity. The ALJ cited a number of grounds, tied to the evidence, for his adverse credibility finding. He did not simply recite the general factors he considered, but also "stated what specific evidence he relied on in determining that [the claimant's] allegations of disabling pain were not credible."). *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ properly placed the burden on the Commissioner at step five to show that the plaintiff retained a sufficient RFC to perform work in the national economy, given his age, education and work experience.

For all the reasons stated above, the Court finds that the ALJ applied the correct legal standards and that his conclusions were supported by substantial evidence in the record.

## IV. Conclusion

IT IS THEREFORE ORDERED that the Commissioner's denial of benefits is affirmed.

Dated this 20th day of February, 2014, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge